UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**ERINMEDIA, LLC and
REACTV, LLC**,

      Plaintiffs,

vs.                                        **Case No.: 8:05-CV-1123-T-24EAJ**

**NIELSEN MEDIA RESEARCH, INC.**,

      Defendant.
_____/

## ORDER

Defendant Nielsen Media Research, Inc.'s sealed **Motion to Compel Compliance with Subpoena** (S-4) and non-party Frank S. Maggio's sealed **Opposition to Nielsen's Motion to Compel** (S-5) are before the court. Upon consideration, Nielsen's motion to compel is **DENIED**.

**I.  Background**

This is an antitrust case in which plaintiff erinMedia, LLC claims that through anticompetitive conduct Nielsen has blocked its attempts to provide national television audience measurement ratings based on data collected from cable set-top boxes. Nielsen denies these allegations and raises the issue of whether erinMedia is an actual or potential competitor in the market for national television ratings. If erinMedia is not, it lacks standing to pursue its claims as a matter of law. (See Dkt. 28)

Non-party Frank Maggio is the Chairman and owner of plaintiff erinMedia, LLC, among other companies ("The Frank Maggio Companies"). In response to discovery, erinMedia has produced documents obtained from its files as well as those of dismissed Defendant ReacTV, LLC and Mr. Maggio's personal files. On August 28, 2006, Nielsen also served Mr. Maggio personally

with a subpoena for the production of 17 categories of documents under Fed. R. Civ. P. 45.  In the subpoena, Nielsen defines "documents" to include all materials in the possession and control of The Frank Maggio Companies (S-3, Ex. 4).[1]

On October 2, 2006, Mr. Maggio (through his counsel who also represents erinMedia) objected to Nielsen's definitions of "Frank Maggio" and "The Frank Maggio Companies" as unduly broad (S-4, Ex. 4).  Mr. Maggio also objected to Requests 1 through 10, 16, and 17 of the subpoena on the grounds that he had already performed identical searches in responding to Nielsen's discovery directed to erinMedia.  These requests in general seek information pertaining to erinMedia's efforts to enter the television measurement market.  Concerning Nielsen's Requests 12 through 15, which seek documents addressing Mr. Maggio's personal financial resources, the value and extent of his business interests, and his reputation in the business community, Mr. Maggio objected on burden and relevance grounds. (S-4, Ex. 4)

On March 14, 2007, approximately five months after receiving Mr. Maggio's objections, Nielsen again urged him to comply with the subpoena, and again Mr. Maggio objected that there was no basis for him to search the files of all of his companies beyond the searches that erinMedia and Mr. Maggio had already performed. (See S-4, Ex. 10, 11)

Nielsen thereafter filed the instant motion to compel.

---

[1] The subpoena defines "Frank Maggio" to include "his companies, predecessors, successors, divisions, departments, partners, employees, agents, officials, representatives, associates, consultants, brokers, attorneys, advisors, accountants and all persons and entities acting pr purporting to act on his behalf." (S-4, Ex. 3 at 3)  The "Frank Maggio Companies" are defined to include "without limitation, current and former subsidiaries, divisions, departments, operating unites, partners, directors, shareholders, employees, officers, agents, officials, representatives, associates, consultants, brokers, attorneys, advisors, accountants and all persons and entities acting or purporting to act on its behalf." (Id.)

**II.     Analysis**

Rule 45, Fed. R. Civ. P., governs discovery of non-parties by subpoena. If an objection is made, the party serving the subpoena is not entitled to the documents at issue but may, upon notice to the person commanded to produce, seek an order to compel the production. Fed. R. Civ. P. 45(c)(2)(B). The scope of permissible discovery under Rule 45 is that set forth in Fed. R. Civ. P. 26(b)(1), which was amended in 2000 to provide that "Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party . . ." Further, "for good cause shown, the court may order discovery of any matter relevant to the <u>subject matter</u> involved in the action." Fed. R. Civ. P. 26(b)(1), (emphasis supplied); <u>see also</u> Fed. R. Civ. P. 45d)(1), Advisory Committee Note ("[t]he changes make it clear that the scope of discovery through a subpoena is the same as that applicable to Rule 34 and other discovery rules.").

The rule change was to involve the court more actively in regulating the breadth of sweeping or contentious discovery. Fed. R. Civ. P. 26, Advisory Committee Note. The Advisory Committee intended by the rule change for the parties and the court to focus "on the actual claims and defenses involved in the action." The rule change signals to the court that "it has the authority to confine discovery to the claims and defenses asserted in the pleadings . . ." Rule 26, Fed. R. Civ. P., Advisory Committee Note.

With regard to the burden imposed on non-parties in responding to discovery requests, courts consider the following factors: relevance, the requesting party's need for the documents, the breadth of the document request, and the time period covered by the request. See <u>Cytodyne Tech., Inc. v. Biogenic Tech., Inc.</u>, 216 F.R.D. 533, 535 (M.D. Fla. 2003), citing <u>Farnsworth v. Proctor & Gamble Co.</u>, 758 F.2d 1545 (11th Cir. 1985).

A.     Requests 1 through 10, 16 and 17

In its motion to compel, Nielsen concedes that Requests 1 through 10, 16, and 17 of the subpoena are largely identical in substance to Nielsen's First Request for Production of Documents directed to erinMedia (S-4 at 10).[2] Nielsen argues at length that the requests are relevant because erinMedia has already responded to the same discovery requests without questioning their relevancy and because the requests address erinMedia's contention that it is a competitor in the relevant market and that Nielsen has blocked its attempts to compete. Nielsen next maintains that its requests are not unduly burdensome because the need for the information outweighs any burden imposed on Mr. Maggio in producing the documents. Nielsen makes clear that it is not requesting that Mr. Maggio produce documents that erinMedia has already produced in discovery.

The court agrees that the requests enumerated above seek relevant information.[3] In his response to Nielsen's motion to compel, however, Mr. Maggio does not dispute this. Instead, he contends that he has already searched all of his personal files and the files of his companies that might reasonably contain responsive documents dating from the inception of erinMedia in 1999 through March 2006, the cutoff date the parties agreed upon (S-4, Ex. 4 at 5-6). Mr. Maggio argues that he should not be required to search the files of all of his companies not connected with this case.

Upon consideration of the relevant factors, Nielsen's motion to compel as to Requests 1 through 10, 16 and 17 is denied. Mr. Maggio represents that erinMedia has already produced responsive documents from its files and from the files of Mr. Maggio and "other custodians" dating

---

[2] Nielsen represents that it no longer seeks documents in response to its Request No. 11.

[3] Specifically, Requests 1, 3 through 8, and 10 pertain to whether erinMedia has ever entered or attempted to enter the market for national television ratings, and Requests 2, 9, 16 and 17 are relevant to erinMedia's position that Nielsen has engaged in anticompetitive conduct.

4

from the inception of erinMedia in 1999 through March 2006, the cutoff date the parties agreed upon (S-4, Ex. 4 at 5-6). Specifically, Mr. Maggio states that he produced documents from his personal files "without regard to any company lines." (Id. at 6). Mr. Maggio apparently has one office from which he runs all of his companies; he maintains that in responding to requests targeting erinMedia, he searched and produced all files in the office he reasonably believed contained responsive documents.[4] Nielsen does not explain why it believes that The Frank Maggio Companies, many of which are involved in real estate development and not television audience measurement, possess or control responsive documents. Moreover, in light of Mr. Maggio's representation that he has produced all responsive, non-privileged documents from his and erinMedia's files, Nielsen has not demonstrated a need for the information that outweighs the burden imposed on Mr. Maggio if he were required to search all of his companies' files for responsive information.

The court also notes that Nielsen's letter to Mr. Maggio in response to his subpoena objections addresses only Requests 12 through 15 (S-4, Ex. 10). Thus, Mr. Maggio was not on notice that Nielsen's motion to compel would involve his objections to Requests 1 through 10, 16, and 17, as required by Fed. R. Civ. P. 45(c)(2)(B).

Therefore, Nielsen's motion to compel as to Requests 1 through 10, 16 and 17 is **DENIED**.

B.     Requests 12 through 15

These requests concern Mr. Maggio's personal finances and business reputation. Specifically, Request 12 asks for documents showing Mr. Maggio's current net worth and financial resources. Request 13 seeks documents demonstrating the extent of Mr. Maggio's and his

---

[4] Mr. Maggio also clarifies in his objections to the subpoena that he is not withholding any documents from Nielsen on the grounds that they are in his personal files and not those of erinMedia.

companies' business interests, including real estate holdings, holdings in other companies, joint ventures, and any other business venture. Request 14 seeks documents reflecting statements by any person concerning Mr. Maggio's honesty, integrity, business competence, or reputation in the business community, and Request 15 concerns any alleged violation of law by Mr. Maggio or his companies.

Nielsen argues that erinMedia placed these matters squarely at issue when it announced through an online source in February 2007 (after the date of the subpoena) that Nielsen's recent unveiling of its Digital Plus technology thwarted erinMedia's efforts to attract investment to its technology ventures. Nielsen contends instead that rumors surrounding Mr. Maggio's business tactics are the true reason investment in erinMedia fell through. More specifically, Nielsen's position is that these topics are directly relevant to erinMedia's claims that it is or was a potential competitor of Nielsen's, and production of the documents would not impose an undue burden on Mr. Maggio under Fed. R. Civ. P. 45. Nielsen claims it has no other method of conducting discovery related to the issue of whether an alternative explanation for erinMedia's lack of funding exists.

Mr. Maggio counters that documents concerning his personal finances and ability to fund erinMedia are irrelevant to the case. Nielsen's attempts to paint Requests 12 through 15 as relevant are improper, according to Mr. Maggio, because the February 2007 online article Nielsen cites as placing Mr. Maggio's personal affairs at issue was published after the subpoena date. Further, he argues that the subpoena imposes an undue burden because Nielsen has not demonstrated that Mr. Maggio's other companies not involved in television audience measurement have information relevant to the case. (S-4, Ex. 4 at 6)

Mr. Maggio also notes that Nielsen has issued a subpoena to Spark Capital, the company that

had planned to invest in erinMedia but pulled its funds, and it has taken the Fed. R. Civ. P. 30(b)(6) deposition of Spark Capital.  Further, ErinMedia is also responding to Nielsen's request for documents referenced in the February 2007 article.  Although Mr. Maggio argues that these efforts to obtain information from third parties do not undercut his objections on relevancy grounds, they are at least a more direct route to obtain the subject information. (Id. at 6-13)

After considering the applicable factors, such as relevance, burden on the responding non-party, breadth of the document request, and the requesting party's need for the documents, the undersigned denied Nielsen's motion to compel as to Requests 12 through 15.  Although Nielsen argues that Requests 12 and 13 call for the production of financial information that will show Mr. Maggio's ability to contribute financially to erinMedia, it does not show how such personal financial information – some with no relation to erinMedia – would be relevant.  Nielsen could have obtained the information pertaining to the potential financing of erinMedia from a more targeted request directed to Mr. Maggio or from discovery directed to erinMedia, Mr. Maggio, ReacTV, or Spark Capital.  See Am. Standard Inc. v. Humphrey, No. 3:06-cv-893-J-32MCR, 2007 WL 1812506, at * 5-6 (M.D. Fla. June 22, 2007) (denying motion to compel compliance with subpoena that requested tax returns and other financial information from individual non-parties who allegedly financed company owned by defendant in violation of non-compete provisions).

Additionally, both parties make much of the February 2007 online article concerning whether Nielsen's DigitalPlus technology impacted erinMedia's investment opportunities in January and February of 2007.  As Mr. Maggio points out, the controversy surrounding the issue erupted after the subpoena date (in fact, Nielsen unveiled DigitalPlus after the subpoena date),

and it is clear that the article is what renewed Nielsen's interest in Mr. Maggio's subpoena responses (see S-4, Ex. 10). A subpoena addresses itself to documents in existence as of the date the subpoena is responded to, not documents created thereafter. See Alexander v. Fed. Bureau of Investigation, 192 F.R.D. 37, 38 (D.D.C. 2000) (noting that a non-party responding to a subpoena is under no duty to supplement discovery responses). Further, Nielsen does not dispute that it has pursued evidence regarding investor financing from other non-party sources, and erinMedia has also produced information pertaining to the article's allegations (with documents obtained from Mr. Maggio's personal files), thus diminishing Nielsen's need to obtain the evidence from Mr. Maggio personally. On balance, Requests 12 and 13 are unduly burdensome, and Nielsen's motion to compel as to requests is denied.

Nielsen's motion is denied as to Requests 14 and 15 as well, which seek information related to Mr. Maggio's reputation in the business community. Nielsen alleges that it needs this information because the controversial statements contained in the article, which was written by a non-party with no connection to the instant litigation, have made it relevant. The court disagrees. In addition to being irrelevant, the requests are unduly broad in that they seek not only statements related to Mr. Maggio's character that have been made during his participation in erinMedia or another media company, but also during any other business venture he has had, apparently stretching back at least to 1999. To respond to such requests would impose an undue burden on Mr. Maggio.

### III. Conclusion

Upon consideration, the court **ORDERS** that:

(1)     Defendant Nielsen Media Research, Inc.'s sealed **Motion to Compel**

**Compliance with Subpoena** (S-4) is **DENIED.** Further, the court directs the parties to show cause, on or before July 13, 2007, why the documents referred to in paragraph one of this order (S-4 and S-5), including any attachments, should not be unsealed.

**DONE** and **ORDERED** in Tampa, Florida on this 3rd day of July, 2007.

/s/ Elizabeth A. Jenkins
ELIZABETH A JENKINS
United States Magistrate Judge

9